UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOUGLAS MURPHY,<br>    Plaintiff, | : <br> : <br> : | PRISONER CASE NO.<br>3:17-cv-269 (VLB) |
| v. | : <br> : | |
| FELICIANO, et al.,<br>    Defendants. | : <br> : <br> : | AUGUST 25, 2017 |

## RULINGS ON MOTIONS TO RECONSIDER INITIAL REVIEW ORDER [Doc.#s 21, 22] AND MOTION FOR RECUSAL [Doc.#24]

On February 16, 2017, the plaintiff, Douglas Murphy, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against Warden Jose Feliciano, Warden Allison Black, Deputy Warden Denise Walker, Commissioner of Correction Scott Semple, Deputy Warden Stacy Marmora, Deputy Warden Richard Laffargue, Dr. Kathleen Maurer, Dr. Mark Buchanan, Director Constance Weiskoph, Gail Johnson, Director Michael Nicholson, the Correctional Managed Health Care ("CMHC"), Attorney Julie Costello, Attorney John Longwell, Attorney Carol Goldberg, and Mary Ellen Castro for unconstitutional denial of access to courts, deliberate indifference to medical needs, attorney malpractice and fraud, and denial of effective assistance of counsel.

On May 31, 2017, this Court issued its Initial Review Order dismissing the plaintiff's claims for denial of access to courts, ineffective assistance of counsel, and attorney malpractice and fraud. The Court permitted the plaintiff's Eighth Amendment deliberate indifference to medical needs claim to proceed but only if the plaintiff could identify the unnamed defendants whom he is suing on that

1

ground. The Court, thus, granted the plaintiff ninety (90) days to identify those unnamed defendants so that the Court could direct service of the complaint. On August 23, 2017, this Court granted the plaintiff an extension until October 2, 2017 to identify those defendants.

On June 26, 2017, the plaintiff filed two motions for the Court to reconsider its Initial Review Order and/or grant the plaintiff leave to amend his complaint [Doc.#s 21, 22]. He claims that the Court erroneously dismissed his denial of access to courts and attorney malpractice claims. The plaintiff also seeks an order recusing this Court from deciding the instant case [Doc.#24]. For the following reasons, the plaintiff's motions to reconsider the Initial Review Order [Doc.#s 21, 22] are GRANTED but the relief requested therein is DENIED. His motion to recuse this Court from deciding the instant case [Doc.#24] is DENIED.

    I.    <u>Motions to Reconsider / Amend Complaint [Doc.#s 21, 22]</u>

The plaintiff has filed motions for reconsideration under Fed. R. Civ. P. 59(e) and 60(b). "Rules 59(e) and 60(b) provide for different motions directed to similar ends." *Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1166 (7th Cir. 1995). Rule 59(e) governs motions to "alter or amend" a judgment, and Rule 60(b) governs relief from a judgment for a compelling reason. *See id.* However, pursuant to District of Connecticut Local Rule 7(c), motions for reconsideration under Rule 59(e) must be filed within seven (7) days of the filing of the Order. *See also Solman v. Corl*, 15 Civ. 1610 (JCH), 2016 WL 6652443, *1 n.3 (D. Conn. Nov. 10, 2016). Rule 60(b) motions, on the other hand, could be filed within one year of the entry of the judgment. Fed. R. Civ. P. 60(c). Because the plaintiff in this case

filed his motions one month after the entry of the Initial Review Order, the Court will treat them as a single motion for reconsideration under Rule 60(b).

A court may grant a motion for reconsideration under Rule 60(b) for any one of the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "A motion for reconsideration under Rule 60(b) [is] generally granted only upon the showing of exceptional circumstances." *Sonberg v. Niagara Cty. Jail.*, 08 Civ. 364 (JTC), 2013 WL 2468691, *3 (W.D.N.Y. Jun. 7, 2013) (quoting *Mendell v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990)). It "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* at *2 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "Reconsideration is not appropriate 'when the moving party seeks solely to relitigate an issue already decided.'" *Id.* at *3 (quoting *Shrader*, 70 F.3d at 257). "[T]he strict requirements of Rule 60(b) apply even to *pro se* litigants." *Id.* at *3.

### A. Denial of Access to Courts Claim

In this case, the plaintiff takes issue with the Court's analysis and dismissal of his denial of access to courts claim. He does not, however, dispute

the Court's recitation of the factual allegations in support thereof. Those factual allegations, as stated in the Court's Initial Review Order, are as follows:

> The plaintiff was arrested on August 16, 2014 and held on a bond of $50,000 cash or surety. The plaintiff posted bond the next day and was released from custody. He later appeared for his arraignment on August 18, 2014, when new charges were added and his bond was increased to $200,000 cash or surety. The plaintiff could not afford to post the increased bond and, consequently, was held at the New Haven Correctional Center ("NHCC") while awaiting the disposition of his case.
>
> While at NHCC, the plaintiff attempted to gain access to legal materials in order to familiarize himself with state statutes and court rules but was informed that there was no law library or legal materials available to inmates at NHCC. The plaintiff subsequently filed a grievance against NHCC staff for the denial of legal materials to NHCC inmates. In retaliation for his grievance, prison staff transferred the plaintiff to Bridgeport Correctional Center ("BCC"), a much less maintained and supervised facility. BCC also does not provide its inmates with access to legal materials.
>
> On October 15, 2014, the plaintiff posted his $200,000 bail and was released. Shortly thereafter, however, he was arrested on new charges and bond was set at $100,000 cash or surety. Prior to his arraignment on the new charges, the court appointed Attorney Julie Costello from the Public Defender's Office to represent the plaintiff for arraignment purposes. Attorney John Longwell from the Public Defender's Office informed the plaintiff that Judge Charles Gill, who was presiding over his case, was known to arbitrarily convert surety bonds to cash only bonds, in violation of Connecticut's bail statutes (CONN. GEN. STAT. § 54-64a). At the arraignment, Judge Gill converted the plaintiff's bond from $100,000 cash or surety to $100,000 cash only for a single charge of a Class D felony. Attorney Costello later withdrew from representation, and the plaintiff was again remanded to NHCC.
>
> While housed at NHCC for the second time, the plaintiff again attempted to gain access to legal materials but was referred to the inmate handbook, which informed all inmates about the Inmate Litigation Assistance Program ("ILAP"). However, the plaintiff subsequently learned that ILAP is limited to civil suits, and does not assist with criminal proceedings. With respect to criminal matters, NHCC only permits its inmates to consult with their attorneys. Without access to adequate legal materials, the plaintiff struggled to

4

> investigate and research the legal issues pertaining to his case. Often times, he was forced to rely on friends and family to provide him with information over the telephone regarding his case.
>
> On November 12, 2014, the plaintiff filed a second grievance against NHCC staff for the facility's denial of access to adequate legal materials. Warden Jose Feliciano denied the grievance on December 1, 2014. The plaintiff subsequently appealed the denial of the grievance, which was also denied. Unlike NHCC and BCC, Osborn Correctional Institution ("Osborn") provides its inmates with access to legal databases for research. Feliciano had the authority, as warden of NHCC, to transfer the plaintiff to Osborn so that he could access legal materials.
>
> After five and one-half months, the plaintiff successfully drafted and submitted a motion to reduce his bail. The court granted his motion, and his bail was converted back from $100,000 cash only to $100,000 cash or surety. The plaintiff successfully posted bail on May 1, 2015 and was released.

Initial Review Order [Doc.#17] at 2-4. The plaintiff claimed that the absence of legal materials at NHCC and BCC delayed his ability to successfully move for a bail reduction by several months. He argued that "[b]ut for the . . . lack of access to the courts/access to legal material, [he] could have, and would have, generated the motion . . . that was successful in 7-10 days instead of 5 ½ months." Pl.'s Compl. at 10.

The Court dismissed the plaintiff's denial of access to courts claim for three reasons. First, the plaintiff failed to sufficiently allege that defendants Semple, Jespen, Black, Walker, Marmora, and Laffargue were personally involved in denying him access to legal material. Second, the plaintiff failed to allege that any of the defendants acted "deliberately or maliciously" in hindering his efforts to pursue a legal claim. Third, the

5

plaintiff failed to allege an "actual injury" as required by *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

With respect to defendants Semple, Jespen, Black, Walker, Marmora, and Laffargue, the plaintiff's complaint is devoid of any facts showing how these defendants prevented him from pursuing his legal claim. Rather, the plaintiff states conclusory assertions that these defendants "actively participated in," "created and/or approved a policy . . . that sanctioned," or were "grossly negligent in . . . supervisi[ng] . . . corrections officers who committed" the constitutional deprivation. Compl. 11-13. In his motion for reconsideration, the plaintiff acknowledges that he "could have provided more detail as to [those] defendants' personal involvement" but, nevertheless, contends that they were in fact personally involved in denying him access to courts and/or legal materials and that his "deficiencies . . . can easily and meritoriously be corrected by amended pleadings." Mot. for Recons. [Doc.#22] at 5. The Court is not persuaded that the plaintiff sufficiently alleged the personal involvement of Semple, Jespen, Black, Walker, Marmora, and Laffargue in his initial complaint.

The Court also dismissed the denial of access to courts claim against defendant Feliciano because the plaintiff failed to allege that Feliciano, or any of the defendants, deliberately or maliciously hindered his efforts to pursue a legal claim. Initial Review Order at 14 (citing *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). In his motion for reconsideration, the plaintiff contends that he is not required to make such an allegation

and that the rule in *Davis* only applies to the interference with an inmate's legal mail.  Mot. for Recons. [Doc.#22-1] at 7-8.  The Court does not agree.

Although *Davis* involved a claim that correction officials were interfering with an inmate's legal mail, the Second Circuit held that "[i]nterference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution."  *Davis*, 320 F.3d at 351.  Thus, although *Davis* may be factually distinguishable, its standard is not limited to cases involving interference with legal mail.  Moreover, the same standard has also been applied to denial of access claims in this Circuit based on factual allegations not involving interference with legal mail.  See *Ramos v. Culick*, 16 Civ. 1312 (FJS/TWD), 2017 WL 835406, *5 (N.D.N.Y. Feb. 9, 2017) (prisoner's denial of access to courts claim based on allegation that defendant denied his Freedom of Information Law request fails because complaint is devoid of facts showing that defendant acted "deliberately and maliciously in frustrating [his] efforts"); *Altayeb v. Chapdelaine*, 16 Civ. 67 (CSH), 2016 WL 7331551, *4-5 (D. Conn. Dec. 16, 2016) (to prevail on claim that defendants unconstitutionally denied him access to telephone to call his lawyer, prisoner must allege that defendant's conduct was "deliberate and malicious"); *Green v. Fischer*, 11 Civ. 6063, 2015 WL 9460145, *4 (W.D.N.Y. Dec. 23, 2015) (prisoner's claim that defendants denied him access to courts by limiting him to one bag of legal material in his cell fails because prisoner failed to allege that

defendants acted "deliberately and maliciously"); *Martinez v. Healey*, 14 Civ. 302 (NSR), 2014 WL 5090056, *4 (S.D.N.Y. Oct. 10, 2014) (prisoner's denial of access to courts claim based on allegations that he was denied access to law library and prohibited from using pen and paper insufficient without showing that defendant's conduct was "deliberate and malicious"); *Cancel v. City of New York*, 07 Civ. 4670 (RRM) (LB), 2010 WL 8965889, *4-5 (E.D.N.Y. Mar. 3, 2010) (plaintiff's claim that detective's failure to identify individuals who assaulted plaintiff interfered with right of access to courts must be supported with facts that detective's conduct was "deliberate and malicious"). The standard comports with the principle set forth in *Lewis*, 518 U.S. at 351, that a prisoner seeking to prevail on a denial of access to courts claim must show more than an allegation "that his prison's law library or legal assistance program is subpar in some theoretical sense." Therefore, the Court does not agree with the plaintiff's contention that he sufficiently stated a denial of access to courts claim.

Finally, the Court dismissed the denial of access to courts claim because the plaintiff failed to allege that he suffered an actual injury as a result of the inadequacy of the prison law libraries. He claimed that "[b]ut for the . . . lack of access to the courts/access to legal material, [he] could have, and would have, generated [a] motion [for bond reduction] . . . that was successful in 7-10 days instead of 5 ½ months." Pl.'s Compl. at 10. In his motion for reconsideration, the plaintiff argues that the denial of access essentially "delay[ed] his release" because it prevented him from

challenging the criminal sentencing court's unlawful order in a timelier manner. Mot. for Recons. at 5. However, "delays in communicating with the courts or delays in the ability to work on a legal action do not rise to the level of a constitutional violation." *Cathedral Church of The Intercessor v. Incoporated Village of Malverne*, 353 F. Supp.2d 375, 388 (E.D.N.Y. 2005) (quoting *Lewis*, 518 U.S. at 353); *see also Kalican v. Dzurenda*, 12 Civ. 1009 (SRU), 2015 WL 1806561, *5-6 (D. Conn. Apr. 21, 2015) (prisoner failed to show actual injury in support of denial of access to courts claim based on allegations that defendants delayed his legal calls and did not immediately grant his requests for envelopes and paper); *Tanzi v. Town of Marlborough*, 13 Civ. 113 (GTS/RFT), 2014 WL 2815777, *5 (N.D.N.Y. Jun. 23, 2014) ("Conduct that merely delays a plaintiff's ability to work on a pending cause of action or communicate with the courts does not amount to a violation of the right to access"); *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) ("A delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation"). Based on the foregoing precedent and the plaintiff's allegations, the plaintiff has failed to allege actual injury for purposes of his denial of access to courts claim.

### B. Attorney Malpractice Claim

The plaintiff also requests that his attorney malpractice claim be reinstated against defendants Costello, Longwell, and Goldberg, but he does not give any specific reasons why the Court's initial dismissal of that

9

claim was incorrect. The Court dismissed the plaintiff's state law claim of attorney malpractice for lack of subject matter jurisdiction. Attorneys Costello, Longwell, and Goldberg were not acting "under color of state law" when they were representing the plaintiff and, therefore, are not subject to suit under 42 U.S.C. § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 318-19 (1981) (public defenders do not act "under color of state law" and therefore are not subject to suit under § 1983); *Osuch v. Gregory*, 303 F. Supp.2d 189, 196 (D. Conn. 2004) (dismissing § 1983 action against public defender for ineffective assistance). The Court cannot exercise supplemental jurisdiction over the plaintiff's malpractice claim because his other claims for denial of access to the courts and deliberate indifference to medical needs are entirely unrelated to the actions of Costello, Longwell, and Goldberg.

Moreover, the claims against the attorneys are misjoined as they do not arise out of the same facts, to the extent the attorneys are not immune from suit. Inconsequence, reinstating those claims would be futile because they would be severed from this action and the Plaintiff would have to assert them in a separate lawsuit. Fed. R. Civ. P. 20; *see Benson v. RMJ Securities Corp.,* 683 F.Supp. 359, 377 (S.D.N.Y.1988).

For the foregoing reasons, the Court declines to reinstate the plaintiff's attorney malpractice claim.

### C. <u>Severance of Claims</u>

After reviewing the plaintiff's complaint, the Court's Initial Review Order, and the motion for reconsideration, the Court will not reinstate the plaintiff's denial of access to courts claim or attorney malpractice claim. Those claims remain dismissed. If the plaintiff chooses to continue pursuing his denial of access to courts claim or attorney malpractice claims, he must raise those claims in a separate lawsuit, as they are completely unrelated to his Eighth Amendment claim for deliberate indifference to medical needs.

This Court may "sever any claim against a party" at its discretion. Fed. R. Civ. P. 21; *Garber v. Randell*, 477 F.2d 711, 714 (2d Cir. 1973). In determining whether to sever claims, the Court must consider:

> (1) whether the claims arise of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Edwards v. North American Power and Gas, LLC*, 14 Civ. 1714 (VAB), 2016 WL 3093356, *3 (D. Conn. Jun. 1, 2016). "Courts within this Circuit have stated that [s]everance requires the presence of only one of these conditions." *North Jersey Media Group, Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 114-15 (S.D.N.Y. 2015) (quoting *Cestone v. General Cigar Holdings, Inc.*, 00 Civ. 3686 (RCC), 2002 WL 424654, *2 (S.D.N.Y. Mar. 18, 2002)). "However, these same courts have generally granted severance only after finding more than one of the conditions was met." *Id.* at 115.

If the plaintiff chooses to continue pursuing his denial of access to courts and attorney malpractice claims, severance is warranted because those claims do not (1) arise from the same factual transaction, (2) present common questions of law, or (3) require the same witnesses and/or documentary proof. The plaintiff brought his denial of access to courts claim against supervisory Department of Correction officials for providing inadequate access to legal materials at NHCC and BCC. The plaintiff's attorney malpractice claims are against attorneys in the Connecticut Public Defenders Office for their inadequate representation of the plaintiff during his bond hearings. His deliberate indifference to medical needs claim relates to nurses and/or correction officers with whom the plaintiff interacted regarding his medical injury. Thus, the three claims are against separate parties based on entirely separate issues. Trying these claims separately would better serve judicial economy. Moreover, any prejudicial effect of severance is minimal considering the case consists solely of a complaint at this juncture, and discovery has not commenced. Thus, any further litigation of the denial of access to courts claim or attorney malpractice claim must occur in a separate lawsuit.

        D. <u>Conclusion Upon Reconsideration</u>

After reviewing the plaintiff's complaint and motion for reconsideration, the Court will not reinstate the plaintiff's denial of access to courts claim or attorney malpractice claim. Those claims remain dismissed. If the plaintiff chooses to continue pursuing his denial of

access to courts claim and/or attorney malpractice claim, he must do so in a separate lawsuit. The plaintiff's motions for reconsideration [Doc.#s 21, 22] are GRANTED but the relief requested therein is DENIED.

II.      <u>Motion for Recusal [Doc.#24]</u>

On August 22, 2017, the plaintiff filed a motion for this Court to recuse itself from the instant action pursuant to 28 U.S.C. § 455. He bases his motion on his memorandum in support of his motions for reconsideration of the Court's order dismissing his denial of access to courts and attorney malpractice claims [Doc.#22-1], in which he "accused the court of readily apparent and blatant misconduct." Mot. for Recusal [Doc.#24] at ¶ 11. He also asserts that, on July 25, 2017, he "filed an extremely poignant complaint of misconduct with the [S]econd [C]ircuit [C]ourt of [A]ppeals misconduct panel," and, therefore, the Court cannot remain impartial in the instant case. *Id.* at ¶¶ 13, 15.

"Any justice, judge, or magistrate of the United States shall disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455. "In cases where a judge's impartiality might reasonably be questioned, the issue for consideration is not whether the judge is in fact subjectively impartial, but whether the objective facts suggest impartiality." *New York ex rel. Boardman v. National R.R. Passenger Corp.*, 04 Civ. 962 (DNH/RFT), 2007 WL 655607, *2 (N.D.N.Y. Feb. 23, 2007) (citing *Liteky v. United States*, 510 U.S. 540, 548 (1994)). "The ultimate inquiry is whether a reasonable person, knowing all

13

the facts, [would] conclude that the trial judge's impartiality could reasonably be questioned." *Id.* (internal quotations omitted.). The Second Circuit has committed broad discretion to the trial court in deciding motions for recusal. *See id.* "In deciding whether to recuse [her]self, the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning [her] impartiality might be seeking to avoid the adverse consequences of [her] presiding over their case." *In re Drexel Brunham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988).

In this case, the plaintiff has not presented the Court with sufficient grounds for recusal. The Court dismissed the plaintiff's denial of access to courts and attorney malpractice claims based on well-established legal precedent and insufficient factual allegations. *See* Sec. I, *supra*. "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. The plaintiff has not pointed to any specific language in the Court's Initial Review Order [Doc.#17] showing any such "favoritism or antagonism." The only language which he claims warrants recusal is that which he wrote himself in his challenge to the Court's ruling. The fact that the plaintiff chose to file a memorandum accusing the Court of misconduct does not call into question the Court's

impartiality. *See Dipietro v. New Jersey*, 14 Civ. 352 (NLH/AMD), 2014 WL 4354027, *2 (D.N.J. Sep. 3, 2014) (plaintiff's letter to justice department accusing judge of criminal conduct and expressing displeasure with judge's opinion does not cause reasonable person to doubt judge's impartiality). "To hold otherwise would allow any disappointed litigant to switch forums by simply making specious allegations." *Id.* Moreover, the plaintiff cannot "force a judge's recusal merely by filing suit against him or her." *Kampfer v. Gokey*, 175 F.3d 1008, *1 (2d Cir. 1999) (citing *United States v. Martin-Trigona*, 759 F.2d 1017, 1020-21 (2d Cir. 1985)). Virtually every decision rendered by a judge disappoints at least one person, and judges are accustomed to having their decisions challenged. In fact, the entire system of appellate review recognizes that trial judges, like all humans, are imperfect and make errors. In consequence, disappointed litigants are afforded under our system of justice an opportunity to raise objections to trial judges' rulings through the appeal process. Indeed, it is through the appellate process that our jurisprudence is advanced and judging is improved. Far from taking umbrage at a disgruntled litigant's challenge to a trial judge's opinion, a judge relishes the opportunity for professional growth through the enlightenment or validation yielded by appellate review. Therefore, a reasonable person would not question this Court's impartiality based on the plaintiff's contentions. The plaintiff's motion for recusal is DENIED.

ORDERS

(1) The plaintiff's motions for reconsideration [Doc.#s 21, 22] are GRANTED but the relief requested therein is DENIED. The plaintiff's denial of access to courts and attorney malpractice claims remain DISMISSED from the instant case. If the plaintiff wishes to continue pursuing those claims, he must do so in a separate lawsuit.

(2) The plaintiff's motion for recusal [Doc.#24] is DENIED.

(3) Plaintiff must amend his complaint asserting only a deliberate indifference claim by the extended deadline of October 2. Failure to meet this deadline will result in dismissal of the case.

(4) The Plaintiff must identify the unnamed defendants in his deliberate indifference claim by October 2, 2017.

SO ORDERED this 25th day of August 2017 at Hartford, Connecticut.

_____
 VANESSA L. BRYANT
 UNITED STATES DISTRICT JUDGE